# IN THE COURT OF APPEALS OF TENNESSEE

## EASTERN SECTION

| | |
|---|---|
| ROY S. OAKES, | ) C/A NO. 03A01-9609-CH-00302 |
| | ) |
| Plaintiff-Appellee, | ) HAMBLEN CHANCERY |
| | ) |
| v. | ) HON. WILLIAM L. JENKINS, |
| | ) CHANCELLOR |
| HARRY LANE NISSAN, INC., | ) |
| | ) AFFIRMED AND |
| Defendant-Appellant. | ) REMANDED |

LORI L. JESSEE and HERBERT M. BACON, BACON, JESSEE, PERKINS & SWANSON, Morristown, for Plaintiff-Appellee.

RODNEY A. FIELDS, LEWIS, KING, KRIEG, WALDROP & CATRON, P.C., Knoxville, for Defendant-Appellant.

## O P I N I O N

Franks. J.

In this action for damages for breach of lease, the Trial Judge awarded damages in the amount of $25,000.00 and

defendant has appealed.

The issues raised by defendant essentially can be distilled into one issue: did the Trial Court err in his determination of the damage award?

Plaintiff Roy Oakes owns land and a building on South Cumberland Street in Morristown Tennessee. The building was built in 1947-48 and Oakes ran a car dealership at the location until 1989. At that time, he leased the property to Defendant Harry Lane Nissan, Inc. The lease was for a term of five years, at $1,500.00 rent per month.

The lease agreement included the following terms:

4. Lessee shall maintain and keep in a good state of repair both the interior and exterior of the buildings upon the leased premises.

7. Lessee agrees, upon the termination of the Lease, to return the said premises to the Lessor in as good a condition as when Lessee took possession, reasonable and ordinary wear and tear excepted.

8. This is a net-net lease with Lessee paying all taxes, insurance premiums and expenses of all maintenance and upkeep to maintain said building in a good state of repair.

9. Default by the Lessee in the payment of any rental when due, failure to pay taxes in a timely manner, or failure to keep the premises insured as agreed herein and pay the premises, therefore, or Lessee's failure to maintain and keep the premises in a good state of repair shall, at the option of the Lessor, cause this lease to terminate and be of no further force and effect, and the Lessor shall be entitled to the immediate peaceful possession of the premised, provided, however, Lessor shall remain liable for any and all monetary payments then due under the terms of this Lease or to become due in the future, mitigated only to the extent of the net proceeds of any monies received by Lessor from third parties who shall occupy the premises under a rental agreement for the remaining term of this Lease. . . .

2

Defendant occupied the leased premises through 1991, operating a Buick-Oldsmobile dealership. At the end of 1991, the Buick-Oldsmobile franchise was moved across town to the same building used for the Nissan franchise. Except for two short sublease agreements and some storage by defendant, the building was vacant for the remainder of the lease term.

There is much testimony as to the stark difference in the condition of the property at the inception and at the end of the lease. Witnesses for plaintiff testified as to the well-maintained and neat condition of the building before the lease. This condition was credited in part to an overall renovation/redecoration 3-5 years before the lease began. Testimony as to the condition of the property after the lease ended told of rugs marked with grease, the removal of fixtures from the restrooms, an alarm system which had been dismantled and was beyond repair, the disappearance of an awning, and water damage to the tiles, the walls, the ceiling, and the roof.

Review of damage awards by a trial court is *de novo* accompanied by a presumption of the correctness of the findings. T.R.A.P. 13(d); *Leek v. Powell*, 884 S.W.2d 118, 120 (Tenn. App. 1994).

Defendant argues that the damages were not proven with reasonable certainty. He disputes the specificity of the receipts and argues that the Trial Court should have considered depreciation of the property when calculating replacement costs. He further argues that plaintiff is not entitled to recover because he had a duty to mitigate the

3

damage, which he allegedly knew was occurring.

Regarding the duty to mitigate, defendant argues that when plaintiff noticed ceiling leaks during a 1991 visit to the property, he could have invoked Section Nine of the lease to take back possession of the property and minimize the damage and repair costs. Defendant claims that because plaintiff instead let the problem continue for several years, he is not entitled to the higher cost of repair and replacement that was required at the end of the lease.

The standard for mitigation of damages is reasonable care. *Cummins v. Brodie*, 667 S.W.2d 759, 766 (Tenn. App. 1983); *also see Hailey v. Cunningham*, 654 S.W.2d 392, 396 (Tenn. 1983). Here, the Trial Court found credible plaintiff's assertions that he had told several members of defendant's staff on several occasions about the leaks and the need for repair. This finding is accompanied by a presumption of correctness which is not overcome by the testimony in the record. The action of requesting the roof be repaired was reasonable, considering that the other covenants of the lease were being followed and plaintiff could fairly assume that defendant would correct the problem. Given these efforts by plaintiff and taking into consideration that the Trial Court did acknowledge that the duty to mitigate was a factor in his determination of damages, the evidence does not preponderate against this aspect of the Trial Court's assessment of damages.

As to the amount damages awarded, the measure of damages for a lessee's breach of covenant to repair is the

4

reasonable cost of restoring the premises to its prior condition. *Vertress v. Tennessee Auto Corporation*, 5 Tenn. App. 140, 152 (1927); 22 Am. Jur. 2d Damages §420 (1988). The Trial Court utilized the cost of repair as the measure of damages, and stated that he had taken into consideration depreciation and the duty to mitigate in assessing the $25,000.00 damages. The award reflected a significant decrease in the hourly rate paid for restoration labor by Tim Oakes. The Trial Court also considered the remaining life-span of the old roof and avoided awarding a windfall for the installment of the new roof made of a sturdier product, by awarding two-fifths of the costs of the new roof as damages. Depreciation on the missing awning resulted in an award of one-third of its cost. Likewise, the assessment for painting the interior of the building was significantly less than its total cost.

We affirm the judgment of the Trial Court's award of damages, because the evidence does not preponderate against the award. T.R.A.P. Rule 13(d).

The cause is remanded with the cost of the appeal assessed to the appellant.

_____
Herschel P. Franks, J.

CONCUR:

5

_____
Don T. McMurray, J.




_____
William H. Inman, Sr. J.